# EXHIBIT B

```
 1                    UNITED STATES DISTRICT COURT

 2         CENTRAL DISTRICT OF CALIFORNIA - WESTERN DIVISION

 3         HONORABLE ANDRÉ BIROTTE JR., U.S. DISTRICT JUDGE

 4

 5   ALEXANDER STROSS, ET AL.,      )
                                    )
 6                 PLAINTIFFS,      )
                                    )
 7            vs.                   ) No. CV 20-0861-AB (PJWx)
                                    )    Consolidated with:
 8                                  )    CV 20-0862-AB (PJWx)
     NETEASE, INC., ET AL.,         )    CV 20-0863-AB (PJWx)
 9                                  )    CV 20-2044-AB (PJWx)
                                    )
10                 DEFENDANTS.      )
     _____)
11

12

13

14         REPORTER'S TELEPHONIC TRANSCRIPT OF PROCEEDINGS

15                    TUESDAY, AUGUST 4, 2020

16                         10:16 A.M.

17                    LOS ANGELES, CALIFORNIA

18

19

20

21

22   _____

23             CHIA MEI JUI, CSR 3287, CCRR, FCRR
                FEDERAL OFFICIAL COURT REPORTER
24              350 WEST FIRST STREET, ROOM 4311
                 LOS ANGELES, CALIFORNIA 90012
25                   cmjui.csr@gmail.com
```

```
 1   APPEARANCES OF COUNSEL:

 2   FOR THE PLAINTIFFS:

 3        DONIGER BURROUGHS
          BY:  STEPHEN M. DONIGER, ATTORNEY AT LAW
 4        603 ROSE AVENUE
          VENICE, CALIFORNIA 90291
 5        (310) 590-1820

 6
     FOR THE DEFENDANTS:
 7
          WHITE & CASE
 8        BY:  STEFAN M. MENTZER, ATTORNEY AT LAW
          1221 AVENUE OF THE AMERICAS, FLOOR 49 RECEPTION
 9        NEW YORK, NEW YORK 10020
          (212) 819-8200
10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

1    reflection of the fact that, you know, I have competent
2    counsel on the other side who has drafted a declaration for
3    maximum effect.  But when you actually look at the factual
4    allegations, they're so narrowly and specifically drawn that
5    what they say just -- it just doesn't really -- it certainly
6    doesn't establish a lack of jurisdiction.
7              It says, well, NetEase doesn't directly enter
8    into -- the defendant doesn't directly enter into a contract
9    with Quantil.  Okay, I mean --
10             But when you look at what it doesn't say and what
11   it doesn't challenge, I think that -- you know, that our
12   opposition really kind of exploits that and says, you know,
13   we understand.  This declaration is here, we have the
14   evidence we have, we don't have the evidence we don't have.
15   But our argument in opposition is certainly not based on
16   just we don't believe them.  It's based on look at what this
17   doesn't challenge.
18             THE COURT:  Okay.  All right.
19             Mr. Mentzer, let me get back to you.
20             Why do you think China would be an adequate forum
21   to litigate this when, generally speaking, they're not
22   exactly the greatest forum to -- intellectual property
23   litigation?  And -- yeah, and it just strikes me that, you
24   know, we've got this company that's Nasdaq listed.  Help me
25   understand why the scale should tilt to litigating it in

```
 1  China or some other forum.
 2            MR. MENTZER:  Your Honor, the standard is not that
 3  the U.S. and China have to provide identical remedies for
 4  copyright infringement.  They have to provide -- they have
 5  to provide an adequate remedy.
 6            And the test, which we cite in our opening brief
 7  in the Velasco case is that, "This test is easy to pass; a
 8  forum will be inadequate only when the remedy provided is so
 9  clearly inadequate or unsatisfactory that it is no remedy at
10  all."
11            So in the first instance, we can't be saying,
12  "Well, we don't have U.S-style, full-blown discovery in
13  China; therefore, we don't have an adequate forum."  That's
14  not the standard that we understand.
15            NetEase has said that it is amenable to service in
16  China for a lawsuit brought in China asserting copyright
17  infringement.  That's in our opening brief at 20.
18            And we have been also -- we've also cited
19  authority in the Central District of California -- that's
20  the CYBERsitter case -- where the Court found China is an
21  adequate -- effective or adequate forum.  The reason for
22  that is that China is a signatory of the Berne Convention,
23  it is a member of the WTO and, thus, a member of the
24  trade-related aspects of intellectual property rights, the
25  fits agreement.
```

1      These conventions require China to have minimum
2  standards of copyright protection on the books and in force
3  and implementing legislation.  They also have to provide
4  national treatment in protection for works of foreign
5  origin.  And China does that, and the CYBERsitter case found
6  that China was an adequate, effective forum.
7      We also want to point out -- this is critical --
8  that, when we are looking at the forum non issue, we have to
9  consider the choice of the forum.  And here the plaintiffs
10 are all foreign to the forum.  The forum is not the U.S. for
11 purposes of forum non conveniens.  It's this forum.  It's
12 the Central District.
13     And here, what we have is the plaintiffs are
14 all -- three of them are residents of outside the U.S.  One
15 is from Texas.  So we have a dispute here in the Central
16 District of California between parties that are entirely
17 foreign to the district, foreign to the forum.  And under
18 those circumstances, there is really no deference at all
19 that is owed to the plaintiffs' choice of forum when there
20 is an adequate --
21          THE COURT:  Would you --
22          MR. MENTZER:  -- alternative forum.
23          THE COURT:  Would you then suggest that I transfer
24 the case to whatever district in Texas, then?  Would that
25 change the analysis?

```
 1              MR. MENTZER:  Well, Your Honor, we wouldn't
 2   suggest that because we think the case has no jurisdictional
 3   basis under 4(k)(2).  So we can't concede that point.
 4   But -- so, you know, for purposes of the analysis is that
 5   there is no jurisdiction at all.
 6              And we also look at not just the forum.  We
 7   consider the practical difficulties as well of litigating
 8   this in the United States.  There -- you know, whether this
 9   is in Texas or in California or wherever in the U.S., it is
10   an incredible burden on NetEase to having to participate in
11   litigation here.
12              Depositions, for example, in China are not allowed
13   in a foreign proceeding.  You have to have a live deposition
14   on Chinese soil or a remote deposition, which, under the
15   Federal Rules, would take place on Chinese soil.
16              Those are prohibited under law, and whoever
17   participates in that is subject to criminal sanctions.
18              Thus -- so what's the alternative?  Then we have
19   to fly people out of the U.S., and that means employees out
20   of the U.S., to -- in this moment, under, you know, COVID
21   travel restrictions and all that for a deposition involving
22   a handful of photographs that were allegedly infringed.
23              And there is also the question of third-party
24   discovery, which is extensive.  And the Complaint names
25   numerous Doe defendants.  It names a couple of other Chinese
```

```
 1   entities.  Those would be subject to third-party
 2   jurisdiction, which we are unable to compel in this case.
 3   So that would not be a possibility.
 4           They -- the plaintiffs -- three of the plaintiffs
 5   are outside of the U.S.  They are freelance photographers,
 6   photographers who, presumably, created their works by hire
 7   from another party.
 8           So we would be able -- we would certainly seek
 9   discovery of their agreement with the hiring party to
10   determine if the plaintiff actually owned the copyrights and
11   what the licensing terms are so we can determine, you know,
12   what a reasonable measure of damages is.  So we have
13   third-party discovery happening outside of the
14   United States.
15           There's just a host of practical difficulties with
16   party discovery in China, third-party discovery in Europe
17   and Australia, that make this not a suitable case for
18   anywhere in the United States.
19           THE COURT:  Okay.  All right.  Let me see if I
20   have any other key questions, just given the hour.
21           MR. DONIGER:  Your Honor, may I just address
22   something on that last point?
23           THE COURT:  Yes.  Go ahead, Mr. Doniger.
24           MR. DONIGER:  Thanks.
25           I just want to note that I think, in the
```