Stephen M. Doniger (SBN 179314)
stephen@donigerlawfirm.com
Benjamin F. Tookey (SBN 330508)
btookey@donigerlawfirm.com
DONIGER / BURROUGHS
603 Rose Avenue
Venice, California 90291
Telephone: (310) 590-1820

Attorneys for Plaintiff

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ALEXANDER STROSS,<br><br>Plaintiff,<br><br>v.<br><br>NETEASE, INC., *et al.,*<br><br>Defendants. | Case No. 2:20-cv-00861-AB-JC<br><u>Hon. André Birotte, Jr. Presiding</u><br><br>**PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION IN LIMINE NO. 1**<br><br>Date: September 16, 2022<br>Time: 11:00 a.m.<br>Courtroom: 7B |

## I. INTRODUCTION

NetEase's request to "preclude all evidence of purported extraterritorial copyright infringements"[1] should be denied because it is entirely unclear what *specific* evidence (i.e., intended or anticipated to be introduced at trial) NetEase seeks to exclude. Moreover, NetEase purposefully made that request vague and broad, as its motion in limine surreptitiously seeks the wholesale exclusion of evidence on an entire subject, and thus seeks the summary adjudication of a dispositive issue in this case. That runs afoul of the rule requiring motions in limine to *not* seek findings of fact, summary adjudication of issues, or a determination of the sufficiency of evidence. This Court should have no patience for such a misuse of the motion in limine process, and for that reason alone this Motion should be denied.

NetEase's Motion is also premised on an incorrect legal standard and ignores the factual underpinnings of this case—specifically with respect to "caching" and why it is a relevant and core issue in this case. But with a basic understanding of caching and that a single infringing act (in whole or in part) within the United States defeats any assertion of extraterritoriality, the spuriousness of NetEase's Motion should be self-evident:

As explained below, both parties in this case proffer expert witnesses who

---

[1] NetEase seeks to "preclude all evidence of purported extraterritorial copyright infringements and particularly of persons in the U.S. accessing a server in a foreign country to view Stross' copyrighted images where: (1) individuals located in a foreign country, (2) using devices entirely located in a foreign country, (3) posted Stross' copyrighted images online in a foreign country." Dkt. 140 at 2. Even assuming *arguendo* the evidence in this case will indicate that the infringing content was initially posted to NetEase servers in China by individuals in China using devices located in China, NetEase's Motion thus seeks to exclude all evidence "of persons in the U.S. accessing a server in a foreign country to view Stross's copyrighted images." As set forth below, that is an inappropriate request for the exclusion of relevant and admissible evidence that goes to a core issue in this case. That is not the purpose, or proper use, of a motion in limine.

will testify about CDNs ("Content Delivery Networks") and how they work, including that CDNs retrieve content from a "host" server the first time such content is requested by an end user and likely cache that content on a server within the CDN in close proximity to that user—which, as discussed in *ALS Scan* below, accelerates delivery of that content when it is subsequently requested. Those expert witnesses will also testify about how, after some period of time during which the content has not been requested again, the cache copy of that content may be deleted, overridden, or replaced (e.g., by more-requested content). Thus, the *first time* an end user in the United States requests content stored on a foreign host server—underneath its obfuscation, the information that NetEase surreptitiously seeks to exclude—if a cache "miss" is generated, caching occurs on the CDN server in close proximity to that end user. That way, the next time the content is requested, there will likely be a cache "hit" because a copy of the content has been stored on that domestic server (i.e., the whole point of the accelerated delivery).

      NetEase's pitch to exclude evidence of the *first time* any United States end user of NetEase's website requested content stored on NetEase host servers—evidence that is directly relevant to when and how the content at issue in this case likely would have cached on domestic servers—is alarmingly inappropriate and must be rejected. It is an unjustifiable attempt to exclude key evidence, including expert witness work and testimony, evidence presented by non-party ImageRights International, Inc., and evidence provided by non-parties Quantil Networks, Inc. and Quantil, Inc. (i.e., the California-based CDN providers who own and operate the above-referenced domestic servers).

      The evidence NetEase seeks to categorically exclude is important for the jury to determine whether NetEase is liable for infringement under the Copyright Act. This Court should deny NetEase's Motion.

## II. ARGUMENT

### A. NetEase improperly seeks summary adjudication of issues by seeking to exclude, *wholesale*, an entire category of evidence.

NetEase has brought a summary judgment motion in a motion in limine's clothing, and its request that this Court adjudicate facts—by virtue of excluding entire swaths of evidence that NetEase has not even bothered to specify with any level of detail—is highly inappropriate.

It is well-established that motions in limine "are not the proper vehicle for a party to ask the Court to weigh the sufficiency of the evidence to support a particular claim or defense, because that is the function of a motion for summary judgment, with its accompanying and crucial procedural safeguards." *Pavo Sols. LLC v. Kingston Tech. Co.*, Inc., No. 814CV01352, 2020 WL 1049911, at *1 (C.D. Cal. Feb. 18, 2020) (internal citations and quotations omitted). Moreover, "[m]otions in limine must identify the evidence at issue and state with specificity why such evidence is inadmissible," and "should rarely seek to exclude broad categories of evidence, as the court is almost always better situated to rule on evidentiary issues in their factual context during trial." *Colton Crane Co., LLC v. Terex Cranes Wilmington, Inc.*, No. CV 08-8525, 2010 WL 2035800, at *1 (C.D. Cal. May 19, 2010) (internal citations omitted). NetEase's Motion runs afoul of these rules.

First, assuming *arguendo* that the evidence in this case will indicate that the infringing content on NetEase's website was initially posted to NetEase's servers in China, by individuals in China, using devices located in China (*see* Dkt. 140 at 3)—which is for the jury, not this Court, to determine—NetEase's Motion seeks to preclude all evidence of persons in the U.S. accessing NetEase servers to view the infringing content. There is no legitimate basis for that.

And NetEase seeks to exclude that broad swath of evidence without identifying any specific evidence anticipated or intended to be introduced at trial.

Because it is entirely unclear what exactly NetEase seeks to exclude, this Motion should be denied. *See In re Homestore.com, Inc.*, No. CV 01-11115, 2011 WL 291176, at *2 (C.D. Cal. Jan. 25, 2011) (holding motion was "over broad and vague, and therefore inappropriate for review"; *Forbes v. Cnty. of Orange*, No. SACV111330, 2013 WL 12165672, at *7 (C.D. Cal. Aug. 4, 2013) (denying defendant's in limine motion as overbroad and "lack[ing] specificity").

Second, whether evidence of persons in the U.S. accessing a server in a foreign country to view photos at issue is introduced at trial, and whether such evidence is sufficient for a finding of liability for copyright infringement under the Copyright Act, is on its face a question of the sufficiency of evidence. NetEase had a shot at summary judgment and chose not to take it. It cannot belatedly do so under the pretext of a motion in limine, and inappropriately ask this Court to make findings that are the jury's to make. NetEase's Motion should be denied.

> **B. NetEase's improper Motion obfuscates the applicable legal standard in an effort to exclude plainly relevant evidence that the jury, not this Court, gets to weigh.**

NetEase claims that "this motion concerns evidence of persons accessing allegedly infringing images, unconnected to any claim that NetEase stored those images on a server in the U.S. or performed any act of infringement in the U.S with respect to those images." Dkt. 140 at 4. Notwithstanding how vague that statement is (which, as discussed above, dooms this Motion), what NetEase appears to be seeking to exclude is evidence that establishes its liability. To understand why, Stross is forced to do what NetEase failed to do—explain "caching" and what leads to domestic caching.

Website owners use a "Content Delivery Network," or a "CDN," to "cache[] [their] content" and "optimize[] the delivery of [their] web pages so [their] visitors get the fastest page load times and best performance." *ALS Scan, Inc. v. Cloudflare, Inc.*, No. CV 16-5051, 2017 WL 11579039, at *1 (C.D. Cal.

June 1, 2017). "Generally, a 'cache' is a computer memory with very short access time used for storage of frequently or recently used instructions or data." *Id*. at *1 n.3 (internal citations and quotations omitted). "Content caching is dependent on two independent factors: (1) where the end user is located; and (2) how many times the website content is requested at a given data server." *Id*. at *4. The *ALS Scan* decision, in which a CDN provider was sued for contributory copyright infringement, illustrates an example: "some files are served from Cloudflare's CDN cache, which occurs when the file is available at a particular data center, while other files are served from the origin host server of the client's website, which occurs when the file is not available at a particular data center." *Id*. By localizing storage of copies of website content on CDN servers based on requests for that content from local end users, a website owner can accelerate the speed at which requested content is delivered to those end users.

      To determine whether caching has occurred, triers of fact have looked to whether there was a cache "miss"—indicating that the file at issue was served from a "host" server—and/or a cache "hit"—indicating that the file was served from a CDN server. For example, in *ALS Scan*, 2017 WL 11579039 at *9–11, the court (on summary judgment) considered evidence of "'CF-Cache Status' header[s]" (i.e., showing "whether or not a cache copy of a given image was sent from one of Cloudflare's CDN servers," including whether the status was a "hit"), and "'CF-Ray' header[s]" (i.e., codes which "corresponds to the location of the Cloudflare server that [] provided a cache copy of the image").

      NetEase knows that "courts have not limited liability for copyright infringement to the permanent copies of infringing images that are stored on the primary 'host' computer . . . *e.g.*, the origin server where the original copy is stored. Rather, the Ninth Circuit has made clear that liability for infringement exists where a copy of an infringing image is stored on a computer server, regardless of whether that computer is the primary 'host' of the infringing

5
PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION IN LIMINE

website's content." *ALS Scan*, 2017 WL 11579039 at *6 n.8; *Perfect 10, Inc. v. Amazon.com, Inc.*, 508 F.3d 1146, 1160 (9th Cir. 2007). Yet NetEase attempts to keep this Court in the dark by seeking a *factual finding* that evidence of cache "misses" *and* "hits" are inadmissible because they do not establish Stross' claims. *See, e.g.*, Dkt. 150 at 6. But cache "hits" result from "visit[s]"—that is quite literally how caching works. *See ALS Scan*, 2017 WL 11579039 at *4, 7-8.

Both parties in this case proffer expert witnesses who will testify about CDNs and how they work, including that CDNs retrieve content from a "host" server the first time such content is requested by an end user and likely cache that content on a server within the CDN in close proximity to that user—which, as discussed in *ALS Scan*, accelerates delivery of that content when it is subsequently requested. Those expert witnesses will also testify about how, after some period of time during which the content has not been requested again, the cache copy of that content may be deleted, overridden, or replaced (e.g., by more-requested content). Thus, the *first* time an end user in the United States requests content stored on a foreign host server, if a cache "miss" is generated, caching occurs on the CDN server in close proximity to that end user (i.e., the whole point of the accelerated delivery). That way, the next time the content is requested, there will likely be a cache "hit" because a copy of the content has been stored on that domestic server.

In this Motion, NetEase asks this Court exclude evidence of the *first time* any United States end user of NetEase's website requested content stored on NetEase host servers—evidence that is directly relevant to when and how the content at issue in this case likely would have cached on domestic servers and implicates Stross' searches, his expert witness' work and testimony, evidence presented by non-party ImageRights International, Inc., and evidence provided by non-parties Quantil Networks, Inc. and Quantil, Inc. (i.e., the California-based CDN providers who own and operate the above-referenced domestic servers). That request is highly inappropriate.

Worse still, NetEase supports its inappropriate request by disingenuously arguing that Stross' copyright infringement claims solely comprise allegations that "NetEase infringed [his] copyrights by publishing his copyrighted images (or contributing to the publication of those images) on its foreign websites" (Dkt. 140 at 3). That is simply not true. If a single infringing act occurs, in whole or in part, within the United States, there is liability for copyright infringement under the Copyright Act.[2]

It is ultimately for the jury to determine whether the evidence presented supports a finding of infringement, and to make that determination the jury must be permitted to consider evidence relevant to that question. NetEase is not trying to prevent jury confusion, it is trying to mislead this Court and exclude evidence that

---

[2] *See, e.g.*, *ALS Scan*, 2017 WL 11579039, at *5–8 ("To the extent cache copies of Plaintiff's images have been stored on Cloudflare's U.S. servers, the creation of those copies would be an act of direct infringement by a given host website within the United States."); *Shropshire v. Canning*, 809 F.Supp.2d 1139, 1146 (N.D. Cal. 2011) (where a Canadian defendant uploaded an infringing video from Canada to YouTube, which caused copies of the video to be made on YouTube's servers in California, holding that the defendant's actions were not extraterritorial because the defendant's "direct action led to the creation of a copy of the [infringing video] on YouTube's servers in California"); *L.A. News Serv. V. Conus Comm'cn Co. Ltd.*, 969 F.Supp. 579, 582-84 (C.D. Cal. 1997) (holding that U.S. copyright laws applied to a Canadian broadcaster that broadcasted infringing material from Canada to Canadian residents, because the material was picked up by United States networks); *Crunchyroll, Inc. v. Pledge*, No. C 11-2334, 2014 WL 1347492, at *17 (N.D. Cal. Mar. 31, 2014) (holding that defendant who copied and uploaded copyrighted television episodes while in United Kingdom could be liable where those episodes were transmitted to United States viewers); *Columbia Pictures Indus., Inc. v. Fung*, No. CV 06-5578, 2009 WL 6355911, at *8-9 (C.D. Cal. Dec. 21, 2009) ("[P]laintiffs have presented admissible evidence of domestic infringement involving a copyright owned by each of Plaintiffs. Plaintiffs provide evidence based on internet protocol ('IP') address data and usage-summary data produced by Defendants themselves."); 3 Nimmer on Copyright § 12.04[D][2] at 131 (2013) ("[T]he act of authorizing in Taiwan such unlicensed reproductions in the United States constitutes a violation of the Copyright Act, making the [entity authorizing the reproduction] liable under U.S. law . . . .").

will *help* the jury understand what NetEase did. This Motion should be denied.

## III. CONCLUSION

For the foregoing reasons, this Court should deny NetEase's Motion.

Respectfully submitted,

Dated: September 2, 2022   By:   */s/ Stephen M. Doniger*
Stephen M. Doniger, Esq.
Benjamin F. Tookey, Esq.
DONIGER / BURROUGHS
Attorneys for Plaintiff