Stephen M. Doniger (SBN 179314)
stephen@donigerlawfirm.com
Benjamin F. Tookey (SBN 330508)
btookey@donigerlawfirm.com
DONIGER / BURROUGHS
603 Rose Avenue
Venice, California 90291
Telephone: (310) 590-1820

Attorneys for Plaintiff

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ALEXANDER STROSS,<br><br>Plaintiff,<br><br>v.<br><br>NETEASE, INC., *et al.,*<br><br>Defendants. | Case No. 2:20-cv-00861-AB-JC<br>*Hon. André Birotte, Jr. Presiding*<br><br>**PLAINTIFF'S CONSOLIDATED OPPOSITION TO DEFENDANT'S MOTIONS IN LIMINE NOS. 2, 3, AND 6**<br><br>Date: September 16, 2022<br>Time: 11:00 a.m.<br>Courtroom: 7B |

## I. INTRODUCTION

NetEase has filed three motions in limine that seem to address the same subject matter; specifically, its Motion Nos. 2 (to exclude all evidence and argument "relating to unpled photographs allegedly infringed by NetEase"), 3 (to exclude all evidence and argument that "references to ImageRights Screenshots on the grounds and to the extent they display images of photographs which are not one of the 16 digital photographs identified and at issue"), and 6 (to exclude evidence and argument that "references the ImageRights Sighting Reports on the ground and to the extent they are either unrelated to the 16 digital photographs identified and at issue . . . or were not disclosed as part of Stross' Rule 26 disclosures"). It is unclear why NetEase filed three plainly overlapping motions, but to save this Court from having to repeatedly address the same issue, Stross submits this consolidated opposition to them.

As an initial matter, these Motions smack of bad faith. At NetEase's request (*see* Dkt. 22), this Court consolidated discovery between this case and three other cases. As a result, NetEase, Stross, and non-parties (including ImageRights International, Inc. ("ImageRights")) produced evidence that is both relevant to this case and relates to photographs other than the 16 Subject Photographs at issue in this case. Yet NetEase now seeks to use the procedural circumstances *it caused* to exclude probative evidence. Equally troubling, it does so without identifying any specific evidence or even attempting to explain how the use of any such evidence would unfairly prejudice it.

As explained in several of Stross' oppositions to other of NetEase's motions in limine (filed concurrently herewith), the central issues in this case include how NetEase obtained and posted the infringing content (which is relevant to NetEase's volitional conduct and its willfulness) and whether that content cached on domestic servers. The evidence NetEase seeks to exclude goes to the heart of those questions, and readily undermines NetEase's amorphous assertion that "any

evidence relating to unpled photographs should be excluded on the grounds that it is irrelevant [and] would have no probative value in this case" (Dkt. 141 at 8).

NetEase has also made no showing of any prejudice, let alone undue prejudice, and if this Court had any such concerns with regard to any specific evidence it could easily address them with a limiting instruction.

Accordingly, this Court should deny NetEase's Motion.

## II. ARGUMENT

### A. Some evidence produced in this case, including screenshots and "sighting" reports from non-party ImageRights, references other photographs yet are relevant to this case and not unduly prejudicial.

This case concerns NetEase's infringement Stross' 16 Subject Photographs. Stross is not seeking a finding of liability on any other photograph, and as such agrees that questions such as copyright ownership or registration related to any other photograph are not relevant. However, certain evidence that references other photographs is relevant to the determination of NetEase's liability in *this* case, and NetEase has made no showing that it would suffer any undue prejudice as a result of the introduction of that evidence. Therefore, this Motion must be denied.

Initially, NetEase fails to specify any specific documents or testimony it aims to preclude in any of its three Motions. The only reference to any specific evidence is on page four of its Motion No. 6, which explains that Stross "produced Sighting Reports . . . which relate to the 16 images identified in his complaint." But these are *not* the exhibits NetEase is seeking to exclude. Rather, NetEase goes on to assert in the next sentence that it "is of the opinion and belief that in addition to ImageRights Sighting Reports related to the 16 separate and distinct screenshots identified by Mr. Stross in his complaint he now intends to introduce and rely on additional Sighting Reports which are unrelated to these alleged 16 infringing images." Dkt. 143 at 4-5.

It is unclear whether NetEase is objecting to the introduction of documents

that it believes were not produced in discovery, or the introduction of specific documents that were part of the thousands of Bates-stamped documents produced in this case. Thus, NetEase has hampered Stross' ability to address these Motions with anything more than a generalized explanation of why documents that reference other photographs may be relevant. That is grounds enough to deny this these Motions as "over broad and vague, and therefore inappropriate for review at the motion in limine stage." *In re Homestore.com, Inc.*, No. CV 01-11115, 2011 WL 291176, at *2 (C.D. Cal. Jan. 25, 2011); *Colton Crane Co., LLC v. Terex Cranes Wilmington, Inc.*, No. CV 08-8525, 2010 WL 2035800, at *1 (C.D. Cal. May 19, 2010) (stating that "[m]otions in limine must identify the evidence at issue and state with specificity why such evidence is inadmissible" and "should rarely seek to exclude broad categories of evidence, as the court is almost always better situated to rule on evidentiary issues in their factual context during trial"); *Forbes v. Cnty. of Orange*, No. SACV111330, 2013 WL 12165672, at *7 (C.D. Cal. Aug. 4, 2013) (denying motion in limine as overbroad and lacking specificity when defendant sought to exclude "any evidence" not properly disclosed pursuant to Rule 26).

Even if this Court is inclined to consider excluding the referenced "broad categories of evidence," though, these Motions must be denied because the challenged evidence is relevant to several key issues in this case, and the introduction of that evidence would not be unduly prejudicial to NetEase.

    **1. The challenged categories include documents relevant to establishing domestic infringement.**

NetEase does not seriously dispute the unauthorized use of Stross' Subject Photographs on its website. Rather, its primary defense is that it purportedly operates solely in China, and that Stross cannot prove U.S.-based infringement where unauthorized copies of the Subject Photographs are stored on its "host" servers in China. But "courts have not limited liability for copyright infringement

to the permanent copies of infringing images that are stored on the primary 'host' computer . . . *e.g.*, the origin server where the original copy is stored. Rather, the Ninth Circuit has made clear that liability for infringement exists where a copy of an infringing image is stored on a computer server, regardless of whether that computer is the primary 'host' of the infringing website's content." *ALS Scan, Inc. v. Cloudflare, Inc.*, No. CV 16-5051-GW(AFMX), 2017 WL 11579039, at *6 n.8 (C.D. Cal. June 1, 2017).[1]

In *ALS Scan*, the court explained that website owners use a "content delivery network," or a "CDN," to "cache[] [their] content" and "optimize[] the delivery of [their] web pages so [their] visitors get the fastest page load times and best performance." *Id.* at *1. In this case, Stross retained an expert witness, David Martens, to explain how CDNs function and determine whether the Subject Photographs cached on the domestic servers of NetEase's CDN provider.

As NetEase knows, it initially removed the 163.com URLs displaying the infringing content at issue at the outset of this case—long before expert witness retention and disclosure—rendering them unavailable to Mr. Martens for evaluation. Mr. Martens thus conducted tests on similar posts on NetEase's website which contained other images and concluded, *inter alia*, that "*the identified images within the provided URLs are served from NetEase's CDN servers within the United States*" and that "it is more likely than not that NetEase at one time stored the images at issue in the present case within the United States and offered copies of those images to users within the United States notwithstanding that NetEase had

---

[1] *See also Goes Int'l, AB v. Dodur Ltd.*, No.14–cv–05666, 2016 WL 427369, at *3–4 (N.D. Cal. Feb. 4, 2016) (holding that the Copyright Act applied where infringing content was hosted on a server located in China but was accessible to consumer in the United States); *Crunchyroll, Inc. v. Pledge*, No. C 11–2334, 2014 WL 1347492, at *17 (holding that the Copyright Act applied where infringing videos were uploaded in a foreign country but made available to viewers in the United States through third party servers in California)

the technical tools available to easily and effectively geo-block requests for the images originating from users within a cognizable region such as the United States."

Mr. Martens' process and conclusions are proper. As explained in *ALS Scan*, "Plaintiff is [not] required to present direct evidence of copying for each image at issue" because "Plaintiff has presented . . . significant circumstantial evidence of Cloudflare's processes." *Id.* at *10; *see also, e.g.*, *Three Boys Music Corp. v. Bolton*, 212 F.3d 477, 481 (9th Cir. 2000) (copying may be shown through circumstantial evidence); *Victorino & Tavitian v. FCA US LLC*, No. 16-CV-1617, 2017 WL 2578794, at *10–11 (S.D. Cal. June 14, 2017) ("Mr. Stapleford's inability to inspect the alleged defective components of Victorino and Tavitian's vehicles does not preclude him from expressing his expert opinion concerning the cause of the defect").[2]

Then, after service of opening and rebuttal expert reports, additional information became available. Specifically, ImageRights found newly posted URLs on NetEase's website which contained additional infringements of Stross' copyrighted works, including (but not limited to) the 16 Subject Photographs at issue. Initially, Stross ran searches using basic, reliable, and publicly available geolocation tools to find the location of the domestic servers providing that content. Mr. Martens then conducted additional tests on those URLs, and concluded "that NetEase presently caches copyrighted images on its CDN servers

---

[2] *See also Capitol Records, Inc. v. Thomas*, 579 F. Supp. 2d 1210, 1225 (D. Minn. 2008) ("[D]irect proof of actual dissemination is not required by the Copyright Act. Plaintiffs are free to employ circumstantial evidence to attempt to prove [a violation]."); *BMG Rts. Mgmt. (US) LLC v. Cox Commc'ns, Inc.*, 149 F. Supp. 3d 634, 663 (E.D. Va. 2015), *aff'd in part, rev'd in part*, 881 F.3d 293 (4th Cir. 2018) ("BMG may establish direct infringement using circumstantial evidence . . . ."); *London-Sire Recs., Inc. v. Doe 1*, 542 F. Supp. 2d 153, 169 (D. Mass. 2008) (inferring that distribution actually took place "where the defendant has completed all the necessary steps for public distribution").

within the United States."

At trial, Stross will present screenshots and sighting reports to show the NetEase URLs that were tested by both Stross and Mr. Martens. That evidence is necessary to (1) show that the posts tested were similar to the infringing posts at issue, and (2) connect the newly found posts to the tests performed (to the extent both contain the tested URL).

Accordingly, NetEase's Motion is a transparent attempt to exclude both direct and circumstantial evidence that establishes NetEase's domestic infringement and must be rejected, particularly since NetEase has not even attempted to make a showing of any undue prejudice from its introduction.

### 2. The challenged categories include documents relevant to other key questions of fact to be adjudicated at trial.

At least hundreds of documents, if not thousands, were produced in this case that reference, relate to, or show photographs other than the 16 Subject Photographs at issue in this case. It would be impossible to describe the potential relevance of each of them, especially in the confines of a 10-page-maximum opposition, but their significant probative value cannot be understated.

For example, a secondary defense that NetEase intends to advance at trial is that it did not act volitionally in this case because the content at issue is user-generated. But NetEase has produced a number of documents establishing that the content on its site—both posts that include the unauthorized uses of the Subject Photographs and posts that contain other photographs—was acquired by NetEase "scraping" material from the internet. Moreover, the Rule 30(b)(6) witness for NetEase admitted that once that content is uploaded into its system, NetEase takes it upon itself to index, organize, categorize, and display that content in a manner most likely to generate substantial viewership (and advertising revenue).

Under Fed. R. Evid. 406, "[e]vidence of . . . an organization's routine practice may be admitted to prove that on a particular occasion the person or

organization acted in accordance with the habit or routine practice." Thus, evidence that NetEase had a business practice of "scraping" content from elsewhere on the Internet is admissible to prove that it scraped the content at issue, and thus was responsible for the infringement. *See VHT, Inc. v. Zillow Grp., Inc.*, 918 F.3d 723, 732 (9th Cir. 2019) (stating that a party acts volitionally when it "exercised control (other than by general operation of [its website]); selected any material for upload, download, transmission, or storage; or instigated any copying, storage, or distribution of [the] photos") (internal citations and quotations omitted).

While NetEase may wish to exclude evidence that it was responsible for the infringements at issue or limit Stross' ability to address any issues that otherwise may arise, it has not shown that the broad categories of evidence it wishes to exclude are irrelevant or unduly prejudicial. Therefore, these Motions must be denied.

**B. Even if NetEase could show any potential prejudice, a limiting instruction is a more appropriate remedy.**

NetEase has failed to demonstrate that it will suffer any prejudice from the introduction of any of the hypothetical unidentified evidence it seeks to exclude. But even had it identified any specific evidence or provided any cogent explanation of how such evidence could confuse the jury or cause it any undue prejudice, its concerns could be easily and more appropriately addressed through a limiting instruction. Therefore, these Motions should be denied.

**III. CONCLUSION**

This lawsuit is part of four cases that were consolidated for purposes of discovery at NetEase's request. As such, a significant portion of the thousands of pages of documents produced in this case "relate" to images other than the Subject Photographs, as does a fair amount of the deposition testimony by the relevant witnesses in this case. Much of that evidence is directly relevant to central issues in this case, and it would be improper to exclude it absent a concrete showing of

undue prejudice that NetEase has failed to make. For the foregoing reasons, Stross requests that this Court deny these Motions.

Dated: September 2, 2022            By:     Respectfully submitted,

*/s/ Stephen M. Doniger*
Stephen M. Doniger, Esq.
Benjamin F. Tookey, Esq.
DONIGER / BURROUGHS
Attorneys for Plaintiff