1
2
3
4
5
6
7
8

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

9

| | |
|---|---|
| 10 ALEXANDER STROSS, | Case No. 2:20-cv-00861-AB(JC) |
| 11 Plaintiff, | *Hon. Andre Birotte Jr. Presiding* |
| 12 v. | **[PROPOSED] FINAL PRETRIAL** |
| 13 | **CONFERENCE ORDER** |
| 14 NETEASE, INC., et al., | |
| 15 Defendant | |
| 16 | |

17
18
19
20
21
22
23
24
25
26
27
28

# TABLE OF CONTENTS

**1.**  THE PARTIES AND PLEADINGS ...................................................3

**2.**  JURISDICTION ..............................................................................3

**3.**  TRIAL DURATION .........................................................................4

**4.**  JURY TRIAL ...................................................................................4

**5.**  ADMITTED FACTS .........................................................................4

**6.**  STIPULATED FACTS ......................................................................4

**7.**  PARTIES' CLAIMS AND DEFENSES ...........................................5

**8.**  REMAINING TRIABLE ISSUES ..................................................19

**9.**  DISCOVERY ..................................................................................19

**10.**  DISCLOSURES AND EXHIBIT LIST .........................................19

**11.**  WITNESS LISTS ...........................................................................19

**12.**  MOTIONS IN LIMINE ..................................................................20

**13.**  BIFURCATION ..............................................................................20

**14.**  ADMISSIONS ................................................................................20

Following pretrial proceedings, pursuant to Federal Rule of Civil Procedure 16 and Local Rule 16, IT IS ORDERED:

**1.    THE PARTIES AND PLEADINGS**

The parties are:

      a.  Plaintiff Alexander Stross ("Stross"); and

      b.  Defendant NetEase, Inc.  ("NetEase").

NetEase has been served by Plaintiff and has appeared. The pleadings which raise the issues are: Plaintiff's operative Complaint and NetEase's Answer.

**2.    JURISDICTION**

This action arises under the Copyright Act of 1976, 17 U.S.C. § 101, *et seq*. This Court has federal question jurisdiction under 28 U.S.C. §§ 1331, 1338(a)-(b). This Court has also determined that venue in this judicial district is proper under 28 U.S.C. §§ 1391(c), 1400(a). *See* Dkt. 48 at 21 ("Because Defendant is a foreign corporation that is not domiciled in the United States, venue is proper in any judicial district. Therefore, venue is proper in this district and, accordingly, the Court DENIES Defendant's Motion to Dismiss on 12(b)(3) grounds."); *Tatung Co., Ltd. v. Shu Tze Hsu*, 43 F. Supp. 3d 1036, 1051 (C.D. Cal. 2014) (finding that 28 U.S.C. § 1391(c)(3) precluded a foreign, non-resident defendant from raising improper venue as a defense); 14D Charles Alan Wright & Arthur R. Miller, Federal Practice & Procedure § 3810 (4th ed. 2020) (observing that the effect of 28 U.S.C. § 1391(c)(3) is that "non-residents of the United States simply may not object to venue.").

NetEase maintains the assertion of the defenses of lack of personal jurisdiction, improper venue and forum *non conveniens* for the purposes of appeal.[1]

---

[1] Defendant NetEase filed a motion to dismiss asserting a lack of personal jurisdiction, improper venue and forum *non conveniens*. *See* Dkt. 21. The Court denied the motion. *See* Dkt 48. NetEase pleaded this affirmative defense in its Answer. *See* Dkt. 50.

**3.    TRIAL DURATION**

Each party will have 10 hours to present evidence, which includes time for direct and cross examination, 20 minutes for opening statement, and 40 minutes for closing.  The Plaintiff will have 10 minutes for rebuttal.

**4.    JURY TRIAL**

The trial is to be a jury trial pursuant to the demand made by Stross.

Stross and NetEase shall serve and file "Agreed Upon Set of Jury Instructions and Verdict Forms," as well as the "Joint Statement re: Disputed Instructions, Verdicts, etc." by no later than September 2, 2022.  The Parties shall also serve and file a revised Joint Exhibit List no later than September 30, 2022.

**5.    ADMITTED FACTS**

The following facts are admitted and require no proof:

1.    Stross filed registration applications for the Subject Photographs with the United States Copyright Office, which issued registrations covering those Photographs under Reg. Nos. VAu 989-644 and VAu 1-089-810.

2.    The Subject Photographs appeared on 163.com.

3.    A NetEase affiliate (Guangzhou NetEase) entered into an agreement with non-party Wangsu Science and Technology Ltd. ("Wangsu"), a content delivery/distribution network ("CDN"). A true and correct copy of that agreement translated from Chinese to English is set forth at Bates Nos. NE-0000204-20.

4.    Wangsu owns at least two U.S.-based subsidiaries: Quantil, Inc. ("QI"), and Quantil Networks, Inc. ("QNI").

5.    QNI provides Internet Data Center ("IDC") services using Wangsu-owned servers. QNI's corporate headquarters is located at 1840 Enterprise Way, Monrovia, CA 91016.

**6.    STIPULATED FACTS**

The following facts, though stipulated, shall be without prejudice to any evidentiary objection:

1.      Without any admission whatsoever that it in fact has ownership or control over the website www.163.com, NetEase stipulates that it will not contest the issue of its control over the website www.163.com, to the extent that issue is contemplated by the Copyright Act; that it will and hereby does assume liability for any infringements of the works at issue found at www.163.com that Stross prove; and that it will not contend that it cannot be held liable for the acts of copyright infringement alleged in this case on the ground that it lacks control over www.163.com.

**7.      PARTIES' CLAIMS AND DEFENSES**

**Plaintiff's Claims:**

Plaintiff plans to pursue the following claims:

Claim 1: NetEase directly infringed Stross's copyrights.

Claim 2: NetEase willfully infringed Stross's copyrights.

The elements required to establish Stross's claims are summarized below:

1.      <u>Direct Copyright Infringement</u>

"To establish copyright infringement, a plaintiff must prove two elements: "(1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original." *L.A. Printex Indus., Inc. v. Aeropostale, Inc.*, 676 F.3d 841, 846 (9th Cir. 2012), *as amended on denial of reh'g and reh'g en banc* (June 13, 2012).

Stated differently, Stross must "show ownership of the allegedly infringed material and . . . demonstrate that the alleged infringers violate at least one exclusive right granted to copyright holders under 17 U.S.C. § 106. *See* 17 U.S.C. § 501(a) (infringement occurs when alleged infringer engages in activity listed in Section 106); *see also Baxter v. MCA, Inc.*, 812 F.2d 421, 423 (9th Cir. 1987). "One of the rights granted by Section 106 of the Copyright Act is the exclusive right to reproduce the copyrighted work in copies." *Disney Enterprises, Inc. v. VidAngel, Inc.*, 224 F. Supp. 3d 957, 969 (C.D. Cal. 2016) (internal citations and

quotations omitted), *aff'd*, 869 F.3d 848 (9th Cir. 2017). Stross thus has the exclusive right to reproduce, distribute copies of, and publicly display his original artwork. 17 U.S.C. § 106(1)-(3), (5). Here, NetEase has violated all such rights. The elements of infringement are further set forth below:

### A.   Ownership

To prove ownership, Stross will present his U.S. Copyright Registrations for his 16 photographs at issue (collectively, the "Subject Photographs"). Under 17 U.S.C. § 410(c), these registrations constitute *prima facie* evidence of the validity of the copyright and the facts stated thereon, including Stross' ownership of the Subject Photographs and their originality. *Lamps Plus, Inc. v. Seattle Lighting Fixture Co.,* 345 F.3d 1140, 1144 (9th Cir. 2003). Stross will also attest to his creation of the Subject Photographs.

### B.   Access

Stross will also establish that NetEase had an opportunity to access the Subject Photographs before copying same. To do so, Stross need only establish that NetEase or someone in its supply chain had a "reasonable opportunity" to "view the plaintiff's work." *Three Boys Music Corp. v. Bolton*, 212 F.3d 477, 482 (9th Cir. 2000) (*citing* 4 Melville B. Nimmer & David Nimmer, Nimmer on Copyright, §13.02[A], at 13-19 (1999)).

This can be done through establishing that the appearance of the Subject Photographs in the offending posts on NetEase's website could not have been created without copying the Subject Photographs: "[a]ccess may be shown by . . . a similarity between the plaintiff's work and the defendant's work that is so 'striking' that it is **highly likely the works were not created independent of one another**" (emphasis added). Ninth Circuit Model Civil Jury Instruction No. 17.18 (2017); *see also Teespring, Inc. v. Puetz*, No. 15-CV-04149-VC, 2017 WL 956633, at *1 (N.D. Cal. Mar. 13, 2017) ("Puetz may carry his burden on copying by showing that the designs are strikingly similar."); *Three Boys Music*, 212 F.3d at

485) ("[I]n the absence of any proof of access, a copyright plaintiff can still make out a case of infringement by showing that the songs were 'strikingly similar.'"); *Seals-McClellan v. Dreamworks, Inc*., 120 Fed.Appx. 3, 4 (9th Cir. 2004); *Baxter v. MCA, Inc*., 812 F.2d 421, 423-24 (9th Cir. 1987) ("Proof of striking similarity is an alternative means of proving 'copying' where proof of access is absent."); 4 Nimmer on Copyright § 13.02[B] ("At base, 'striking similarity' simply means that, in human experience, it is virtually impossible that the two works could have been independently created."); *Selle v.Gibb*, 741 F.2d 896, 903 (7th Cir. 1984) (a striking similarity is one sufficiently unique or complex as to make it unlikely that it was independently created). Here, it is virtually impossible that the offending posts on NetEase's website were created without reference to the Subject Photographs.[2]

    As set forth below, the photographs in the offending posts are far too strikingly similar to the Subject Photographs to be the result of coincidence; there is no competent, admissible evidence of independent creation; and no evidence of a prior common source.

## C.    Substantial Similarity

    Finally, Stross will establish that the Subject Photographs and the photographs in the offending posts on NetEase's website are at least substantially similar. The Ninth Circuit employs a bifurcated test for substantial similarity— consisting of an extrinsic test and an intrinsic test. *Sid & Marty Krofft Television Prods., Inc. v. McDonald's Corp.*, 562 F.2d 1157, 1164–65 (9th Cir. 1977),

---

[2] *See also Stewart v. Wachowski*, 574 F. Supp. 2d 1074, 1103 (C.D. Cal. 2005) ("[T]o prove that certain similarities are 'striking,' plaintiff must show that they are the sort of similarities that cannot satisfactorily be accounted for by a theory of coincidence, independent creation, prior common source, or any theory other than that of copying. The similarities should be sufficiently unique or complex as to make it unlikely that both pieces were copied from a prior common source, . . . or that the defendant was able to compose the accused work as a matter of independent creation.").

1 | *overruled on other grounds by Skidmore as Tr. for Randy Craig Wolfe Tr. v. Led*
2 | *Zeppelin*, 952 F.3d 1051 (9th Cir. 2020). The "extrinsic test" is an objective
3 | comparison of specific expressive elements. *Cavalier v. Random House, Inc.*, 297
4 | F.3d 815, 822 (9th Cir. 2002). The "intrinsic test" is a subjective comparison that
5 | focuses on "whether the ordinary, reasonable audience" would find the works
6 | substantially similar in the "total concept and feel of the works." *Kouf v. Walt*
7 | *Disney Pictures & Television*, 16 F.3d 1042, 1045 (9th Cir. 1994) (internal
8 | citations and quotations omitted).

9 | In this case, the photographs are so similar that a cursory review reveals that
10 | Stross easily satisfies both tests. With regard to the objective "extrinsic test," it is
11 | clear that the Subject Photographs appeared on NetEase's website. The "intrinsic
12 | test," which focuses on a review of the works by an "ordinary reasonable person"
13 | to the works, is also satisfied. *Sid & Marty Krofft*, 562 F.2d at 1164. Any
14 | reasonable viewer that compared the Subject Photographs with the photographs in
15 | the offending posts on NetEase's website would conclude that the Subject
16 | Photographs were copied.

## D. Volitional Conduct

The parties will file a disputed special jury instruction on this element of the claim. Stross's position is as follows:

Stross must also establish causation, also referred to as volitional conduct, by a preponderance of the evidence. "[T]o demonstrate volitional conduct," Stross need only "provide some evidence showing [NetEase] exercised control (other than by general operation of [its website]); selected any material for upload, download, transmission, or storage; or instigated any copying, storage, or distribution" of the Subject Photographs. *VHT, Inc. v. Zillow Grp., Inc.*, 918 F.3d 723, 732 (9th Cir. 2019).

Stross will show that NetEase took the volitional step of signing up for and using a content delivery network ("CDN") provider's servers to accelerate the

delivery of content on its website, and caused the creation of copies of the offending posts on NetEase's website to be made on the CDN's servers. *ALS Scan, Inc. v. Cloudflare, Inc.*, No. CV 16-5051, 2017 WL 11579039, at *8–9, n.10 (C.D. Cal. June 1, 2017) ("[T]he infringing sites took the volitional step to pay for, and utilize, Cloudflare's CDN servers . . . . Cloudflare's clients sign up, pay for, and utilize Cloudflare's caching services. Such conduct is sufficient to show the third party infringers caused the copies to be created.") (internal citations omitted). Stross will also show that NetEase "scrapes" content from other websites on the Internet, and/or receives such scraped content, and then categorizes, repackages, creates the posts for, displays, and distributes that content.

### E. Infringing Activity within the United States

The parties will file a disputed special jury instruction on this element of the claim. Stross's position is as follows:

Stross must also establish by a preponderance of the evidence that an infringing act took place, in whole or in part, within the United States. *Shropshire v. Canning*, 809 F. Supp. 2d 1139, 1146–47 (N.D. Cal. 2011); *L.A. News Serv. V. Conus Comm'cn Co. Ltd.*, 969 F. Supp. 579, 582-84 (C.D. Cal. 1997); *Columbia Pictures Indus., Inc. v. Fung*, No. CV 06-5578, 2009 WL 6355911, at *8-9 (C.D. Cal. Dec. 21, 2009), *aff'd in part as modified*, 710 F.3d 1020 (9th Cir. 2013); 3 Nimmer on Copyright § 12.04[D][2] at 131 (2013).

Stross will show that NetEase caused the creation of cache copies of the offending posts at issue on, as well as the storage of those cache copies on and the distribution of those cache copies from, its CDN provider's U.S. servers, all of which is conduct that establishes liability under the Copyright Act. *ALS Scan*, 2017 WL 11579039 at *5–8 ("To the extent cache copies of Plaintiff's images have been stored on Cloudflare's U.S. servers, the creation of those copies would be an act of direct infringement by a given host website within the United States . . . . Plaintiff's contention is that the third-party websites themselves are directly liable for the

copies purportedly stored on Cloudflare's U.S. servers, and thus the underlying direct infringement is not wholly extraterritorial. Cloudflare fails to explain why the infringing websites do not commit actionable direct infringement, within the U.S., when they cause the creation of '[copies] . . . closer to the [sites'] visitors' on Cloudflare's domestic servers.").

2.    Willful Infringement

Stross must prove both of the following elements by a preponderance of the evidence:

1.    NetEase engaged in acts that infringed Stross' copyrights; and
2.    NetEase knew that those acts infringed Stross' copyrights, or NetEase acted with reckless disregard for, or willful blindness to, Stross' copyrights.

*See* Model Civ. Jury Instr. 9th Cir. 17.37 (2017).

Stross will show that, at a minimum, NetEase recklessly disregarded the possibility that its conduct constituted copyright infringement. Stross will show that NetEase "scrapes" content from other websites on the Internet, and/or receives such scraped content, without regard to whether NetEase has authority (from the content authors) to display that content; and then categorizes, repackages, creates the posts for, displays, and distributes that content.

A finding of willfulness is also appropriate where the infringer engaged in new infringing conduct after being put on notice of the infringement. *Dolman v. Agee*, 157 F.3d 708, 711, 715 (9th Cir. 1998) (willfulness finding proper where infringer "continued to infringe on the song copyrights when he knew that there was a question as to their ownership, and when he was presented with evidence that [plaintiff] was the true owner"). In this case, NetEase continued to display posts that infringed Stross' copyrights in the Subject Photographs, and even published new posts infringing those same copyrights, after the filing of this case.

3.    Damages

1    Stross is entitled to recover his actual damages suffered as a result of the

2    infringement in the form of lost profits. 17 U.S.C. § 504(b). "[I]t is not improper

3    for a jury to consider either a hypothetical lost license fee or the value of the

4    infringing use to the infringer to determine actual damages, provided the amount is

5    not based on undue speculation." *Polar Bear Prods., Inc. v. Timex Corp.*, 384 F.3d

6    700, 709 (internal quotations omitted). Stross may also seek to recover NetEase's

7    profits that resulted from the infringement. 17 U.S.C. § 504(b).

8       Alternatively, Stross is entitled to an award of statutory damages of up to

9    $150,000 per infringement. 17 U.S.C. § 504(c)(1). Upon a showing of

10   infringement, damages within the statutory range are proper even without evidence

11   of actual damages. *Peer Int'l Corp. v. Pausa Records, Inc.*, 909 F.2d 1332, 1337

12   (9th Cir.1990). Each of the 16 Subject Photographs are entitled to a separate

13   statutory damage award under the "independent economic value" test adopted by

14   the Ninth Circuit—i.e., that where a work has "independent economic value and is,

15   in itself, viable," then it should constitute a separate "work" for purposes of

16   calculating statutory damages. *Columbia Pictures Television, Inc. v. Krypton*

17   *Broad. of Birmingham, Inc.*, 259 F.3d 1186, 1193 (9th Cir. 2001); *Monge v. Maya*

18   *Magazines, Inc.*, 688 F.3d 1164, 1180 (9th Cir. 2012); *Playboy Enterprises, Inc. v.*

19   *Sanfilippo*, No. 97–0670, 1998 WL 207856 (S.D. Cal. Mar. 25, 1998).

20      Stross is also entitled to recover his costs and fees incurred in prosecuting

21   this case. Section 505 of the Copyright Act specifically authorizes an award of

22   attorneys' fees to the prevailing party as part of its costs. 17 U.S.C. § 505. A

23   number of factors are considered in assessing fees and costs, including: "(1) the

24   degree of success of obtained, (2) frivolousness, (3) motivation, (4) the objective

25   unreasonableness of the losing party's factual and legal arguments, and (5) the

26   need, in particular circumstances, to advance considerations of compensation

27   deterrence." *Entertainment Research Group, Inc. v. Genesis Creative Group, Inc.*,

28   122 F.3d 1211, 1229 (9th Cir. 1997).

Prevailing copyright holders should recover their fees under the Copyright Act, especially where, as here, the infringer's position is objectively unreasonable, and a finding of willfulness is not required for fees to be awarded. *Kirtsaeng v. John Wiley & Sons, Inc.*, 136 S. Ct. 1979, 1988 (2016). This issue will be the subject of post-trial motion practice.

5. <u>Plaintiff's Evidence for Its Copyright Infringement Claims</u>

In brief, the key evidence Stross relies on for each of the claims is below:

**1.    Copyright Infringement**

**<u>Ownership</u>**: Stross will present the Subject Photographs, his timely copyright registrations for the Subject Photographs, and his testimony to establish his creation and ownership of the Subject Photographs, and their originality.

**<u>Access</u>**: Stross will testify regarding the availability of the Subject Photographs on his websites and other locations on the internet, including both authorized licensees and unauthorized infringers, and will introduce those photographs and copies of the offending posts on NetEase's website to demonstrate that the offending posts could not have been created without access to Stross' Subject Photographs.

**<u>Substantial Similarity</u>**: Stross will present evidence in the form of Stross' Subject Photographs and the offending posts on NetEase's website that will establish that the works are at least substantially similar. Stross will call Joe Naylor of non-party ImageRights International, Inc. ("ImageRights") to establish ImageRights' discovery and documentation of the offending posts and will also provide testimony regarding viewing those posts.

**<u>Volitional Conduct and Infringing Activity within the U.S.</u>**: Stross will present testimony of NetEase corporate representative Lei Sun, who will testify that NetEase has the ability to limit where its content is seen but takes no steps to prevent access to it in the United States, where it has one of its largest markets for viewers outside of China. He will authenticate the above-referenced agreement

between NetEase and CDN provider Wangsu for unrestricted worldwide delivery of NetEase's website and the content thereon.

Stross will present testimony from NetEase Corporate representative Yao Cheng, who will testify regarding how NetEase obtains content and authenticate NetEase records regarding how the content at issue was obtained, including documents confirming that the offending posts were "scraped" from other websites. He will further explain that once this content is acquired, NetEase creates the offending posts for its website and takes affirmative steps to organize and present the content in a way most likely to attract viewers.

Stross will present testimony from Wangsu subsidiaries Quantil Networks, Inc. and Quantil Inc., establishing that their domestic servers service NetEase and generally explaining the services they offer, including caching content to accelerate delivery of that content to different geographic locations. Stross will also present documents and testimony from NetEase admitting that at least some of the Uniform Resource Locators ("URLs," also known as web addresses) for the offending posts on NetEase's website cached through Wangsu's (Quantil's) servers.

Stross will present testimony from his expert witness, David Martens, explaining caching and confirming tests ran that established that it was more likely than not that the URLs for the offending posts on NetEase's website at issue would have cached on U.S.-based servers, including when they were viewed by Stross, ImageRights personnel (as testified to by Joe Naylor), and others before and during this litigation.

## 2. <u>Willful Infringement</u>

Stross will present testimony from NetEase Corporate representative Yao Cheng, who will authenticate documents confirming that the offending posts on NetEase's website were "scraped" from other websites, and will admit that NetEase understands that the poster of an article is often different from the author

13

or copyright holder of the article; and that NetEase cannot determine, and takes no steps to determine, whether the uploader had authority to copy the content. Joe Naylor and Stross will also testify to the notices and demands sent to NetEase to cease use of the Subject Photographs, through correspondence sent both pre-litigation and during litigation, and that despite those notices NetEase continued to infringe the Subject Photographs, including through new offending posts that NetEase created and displayed during this litigation.

**3.** **Damages**

Stross will present his timely copyright registrations and evidence of the earliest known claims to establish his entitlement to seek statutory damages. In the alternative, and/or in support of that claim, he will present evidence of his licensing rates as reflected in licensing agreements he has entered into for the Subject Photographs (or comparable photographs where the Subject Photographs have not been licensed), and as set forth on his websites. He will also put forth evidence from Lei Sun regarding how NetEase earns money from advertising, the relationship between its advertising earnings and the content it posts, and its advertising revenues from various platforms.

**Defendant's Affirmative Defenses:**

(a)      Defendant plans to pursue the following affirmative defenses:

**Defense 1: Failure to state a claim (extraterritoriality)**

**Defense 2: Failure to state a claim (lack of volition);**

**Defense 3: Lack of Personal Jurisdiction;**

**Defense 4: Improper Venue;**

**Defense 5: Forum *Non Conveniens***

(b)      The elements required to establish Defendant's affirmative defenses are:

**Defense 1: Failure to state a claim (extraterritoriality)**

The parties dispute the elements on this claim and will submit a disputed

jury instruction on the issue. NetEase's position is as follows:

Stross must establish territoriality by a preponderance of the evidence. *See Kirtsaeng v. John Wiley & Sons, Inc.*, 568 U.S. 519, 562 (2013) ("The Copyright Act, it has been observed time and again, does not apply extraterritorially.) (citations omitted); *see also Litecubes v. Northern*, 523 F.3d 1353, 1366-67 (Fed. Cir. 2008) ("Copyright laws do not have extraterritorial operation. . . . The principles and case law discussed above, which led us to conclude that the Patent Act's territorial requirement is an element of the claim that must be established to prove infringement, but not a requirement for subject matter jurisdiction, apply equally to the Copyright Act's limitation on the extraterritorial reach of the statute."). On each of the plaintiff's copyright infringement claims, the plaintiff has the burden of proving by a preponderance of the evidence that an infringing act occurred within the United States. Where the plaintiff's Subject Photographs are stored on a server located within the United States, and such storage was not caused by plaintiff or his agent, that is an act that occurred within the United States.

**Defense 2: Failure to state a claim (lack of causation/volition)**

The parties dispute the elements on this claim and will submit a disputed jury instruction on the issue. NetEase's position is as follows:

Plaintiff has the burden of proving by a preponderance of the evidence that

1.    the plaintiff is the owner of a valid copyright; and

2.    the defendant copied original expression from the copyrighted work; and

3.    defendant was actively involved in the infringement.

To demonstrate active involvement, plaintiff must provide some evidence showing defendant: exercised control (other than by general operation of its website); selected any material for upload, download, transmission, or storage; or instigated any copying, storage, or distribution of its photos. By contrast, automatic copying, storage, and transmission of copyrighted materials, when instigated by

1  others, do not render defendant strictly liable for copyright infringement.

2        This includes a finding that, at least for accused NetEase web pages where

3  users posted content rather that NetEase employees, NetEase did more than

4  provide a platform for third-party users to upload, download, and share content.

5  *See, e.g., Bell v. Wilmott Storage Servs*., 12 F.4th 1065, 1081 (9th Cir. 2021) (one

6  who "exercised control" or "selected any material for upload, download,

7  transmission, or storage" has acted volitionally"); *VHT, Inc. v. Zillow Grp., Inc.*,

8  918 F.3d 723, 731-32 (9th Cir. 2019) (to demonstrate volitional conduct, a party

9  must provide some evidence showing that the alleged infringer "selected any

10  material for upload, download, transmission, or storage; or instigated any copying,

11  storage, or distribution" of its photos").

12  **Defense 3: Lack of Personal Jurisdiction**

13        Defendant filed a motion to dismiss asserting a lack of personal jurisdiction.

14  *See* Dkt. 21. The Court denied the motion. *See* Dkt 48. Defendant pleaded this

15  affirmative defense in its Answer. *See* Dkt. 50.

16        As explained in Defendant's motion to dismiss, *see* Dkt. 21, the Ninth

17  Circuit uses a three-prong test to determine if sufficient minimum contacts warrant

18  a court's exercise of specific personal jurisdiction: 1. The non-resident defendant

19  must purposefully direct its activities or consummate some transaction with the

20  forum or resident thereof;  2. The claim must be one which arises out of or relates

21  to the defendant's forum-related activities; and 3. The exercise of jurisdiction must

22  comport with fair play and substantial justice, i.e., it must be reasonable.

23  *Schwarzenegger*, 374 F.3d 797, 802 (9th Cir. 2004) (quoting *Lake v. Lake*, 817

24  F.2d 1416, 1421 (9th Cir. 1987)). Moreover, for personal jurisdiction to arise under

25  Rule 4(k)(2), a plaintiff must prove: (1) the claim arises under federal law; (2) the

26  defendant must not be subject to the personal jurisdiction of any state court of

27  general jurisdiction; and (3) the federal court's exercise of personal jurisdiction

28  must comport with due process. *See Pebble Beach Co. v. Caddy*, 453 F.3d 1151,

1159 (9th Cir. 2006).

**Defense 4: Improper Venue**

Defendant filed a motion to dismiss asserting improper venue. *See* Dkt. 21. The Court denied the motion. *See* Dkt 48. Defendant pleaded this affirmative defense in its Answer. *See* Dkt. 50.

As explained in Defendant's motion to dismiss, *see* Dkt. 21, venue in this District is improper under 28 U.S.C. § 1400(a).

**Defense 5: *Forum Non Conveniens***

Defendant filed a motion to dismiss asserting improper venue. *See* Dkt. 21. The Court denied the motion. *See* Dkt 48. Defendant pleaded this affirmative defense in its Answer. *See* Dkt. 50.

As explained in Defendant's motion to dismiss, *see* Dkt. 21, a court may dismiss an action for forum non conveniens if: (1) an adequate alternative forum exists and (2) the balance of private and public interest factors favors dismissal. *See Lueck v. Sundstrand Corp.*, 236 F.3d 1137, 1142 (9th Cir. 2001) (affirming dismissal where plaintiff resided in New Zealand); *Polak*, 2019 U.S. Dist. LEXIS 209782, at *3 (dismissing where plaintiff resided in Argentina and neither party had a connection to the forum).

(c)    The key evidence Defendant relies of for each claim includes the following:

**Defense 1: Failure to state a claim (extraterritoriality)**

For each asserted photograph, Defendant will point out the lack of evidence regarding any activity that took place within the United States, including through testimony of the third party that controls the content delivery network servers accused of hosting the infringing images on behalf of Defendant (Quantil), and through testimony by defendant's expert regarding whether any asserted photograph was stored on any server in the United States (Dr. Houh).

**Defense 2: Failure to state a claim (lack of volition)**

Defendant will point out the lack of evidence regarding causation or volition through testimony by a NetEase representative and documentary evidence showing the following: many of the accused web pages were related to photographs posted by users rather than by Defendant or its employees, NetEase notified users that use of infringing materials would lead to bans from the website, NetEase had a Chinese agent to whom copyright infringement could be reported, NetEase terminated the accounts of known copyright infringers, and NetEase took down infringing materials right away after notification.

**Defense 3: Lack of Personal Jurisdiction**

Defendant does not expect to present evidence of this defense before the Court or jury, but maintains the assertion of the defense for the purposes of appeal. NetEase does not waive this defense by litigating the current action. *See Infospan, Inc. v. Emirates NBD Bank PJSC,* 903 F.3d 896, 899 (9th Cir. 2018) ("A defendant that timely asserts that the district court lacks personal jurisdiction and litigates the issue to an adverse decision from the district court does not waive the personal jurisdiction defense by vigorously litigating defenses to the merits").

**Defense 4: Improper Venue**

Defendant does not expect to present evidence of this defense before the Court or jury, but maintains the assertion of the defense for the purposes of appeal. NetEase does not waive this defense by litigating the current action. *See Great Am. Ins. Co. of N.Y. v. Kaisha,* No. 13-cv-00031 NC (N.D. Cal., May 10, 2013) [pp. 4, 6]).

**Defense 5: Forum *Non Conveniens***

Defendant does not expect to present evidence of this defense before the Court or jury, but maintains the assertion of the defense for the purposes of appeal. NetEase does not waive this defense by litigating the current action.

**8.     REMAINING TRIABLE ISSUES**

In view of the admitted facts and the elements required to establish the claims and affirmative defenses, the following issues remain to be tried:

      a.     Whether NetEase committed direct infringement;

      b.     Whether NetEase has an affirmative defense to any direct infringement;

      b.     Whether NetEase committed willful infringement; and

      C.     The amount of damages, if any.

**9.     DISCOVERY**

All discovery is complete, and there is no pending request for further discovery.

**10.     DISCLOSURES AND EXHIBIT LIST**

The parties have made their disclosures under Fed. R. Civ. P. 26(a)(3).

The Joint Exhibit List has been filed under separate cover as required by L.R. 16-6.1.

**11.     WITNESS LISTS**

The Joint Witness List has been submitted to the Court. Plaintiff maintains only the witnesses identified in the lists will be permitted to testify (other than solely for impeachment). Defendant NetEase will seek a substitute witness for one of its two 306(6) deponents, Sun Lei, as he is unavailable to testify. Mr. Lei recently resigned of his own accord. As he worked for NetEase in the People's Republic of China and continues to reside in China, a trial subpoena cannot reach him.

Each party intending to present evidence by way of deposition testimony has marked such depositions in accordance with L.R. 16-2.7.

For this purpose, the following depositions shall be lodged with the Clerk as required by L.R. 32-1: (1) Sun Lei, (2) Bin Ni.

**12.   MOTIONS IN LIMINE**

      The following law and motion matters and motions in limine were filed with the Court on August 26, 2022. The parties have met and conferred on the motions in limine. The following motions in limine, and no others, are pending or contemplated: Plaintiff's Motions in Limine 1-8; Defendant's Motions in Limine 1-8.

**13.   BIFURCATION**

      No Bifurcation is requested.

**14.   ADMISSIONS**

      The foregoing admissions having been made by the parties, and the parties having specified the foregoing issues remaining to be litigated, this Final Pre-Trial Order shall supersede the pleadings, and govern the course of the trial of this cause, unless modified to prevent manifest injustice.

DATED: September 20, 2022

_____
HONORABLE ANDRÉ BIROTTE JR.
UNITED STATES DISTRICT COURT JUDGE